UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
In re:

ALLOU DISTRIBUTORS, INC., *et al.*,

                           Debtors.

Case No. 03-82321-ess
(substantively consolidated)
Chapter 7

--------------------------------------------------------------------------x
KENNETH P. SILVERMAN, as Chapter 7 Trustee
of ALLOU DISTRIBUTORS, INC., *et al.*,

                           Plaintiff,

               - against -

K.E.R.U. REALTY CORP., 2165-K-R REALTY CORP.,
KENT-RUSH REALTY CORP., K-R RESIDENCE
CORP., D.J.R. CONSTRUCTION LLC, R&D
DEVELOPMENT, LLC, CHAIM DUSHINSKY, ISAAC
RABINOWITZ, AARON JACOBS a/k/a ARI JACOBOWITZ,
BEDFORD WALL REALTY CORP., 724 BEDFORD LLC,
TEREZA LLC, "JOHN DOES 1-50," "MARY DOES 1-50,"
"ABC PARTNERSHIPS 1-50" AND/OR "XYZ
CORPORATIONS 1-50,"

                           Defendants.

Adv. Pro. No. 05-8538-ess

--------------------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART
THE MOTION OF CERTAIN DEFENDANTS TO DISMISS THE AMENDED COMPLAINT**

Appearances:

Nathan Schwed, Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022

Franklyn H. Snitow, Esq.
Snitow Kanfer Holtzer & Millus LLP
575 Lexington Avenue
New York, NY 10022

Co-Counsel for Defendants Kent-Rush Realty
Corp., K-R Residence Corp., D.J.R. Construction
LLC, R&D Development LLC, Chaim Dushinsky and
Isaac Rabinowitz

Ronald J. Friedman, Esq.
David J. Mahoney, Esq.
Silverman Perlstein & Acampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Attorneys for Plaintiff Kenneth P. Silverman,
Esq., as Chapter 7 Trustee

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of certain of the above-captioned Defendants, Kent-Rush Realty Corp. ("Kent-Rush Realty"), K-R Residence Corp. ("K-R Residence"), D.J.R. Construction LLC ("DJR Construction"), and R&D Development, LLC ("R&D Development") (together, the "K-R Defendants"), and Chaim Dushinsky and Isaac Rabinowitz (the "Individual Defendants" and together with the K-R Defendants, the "Movants"), to dismiss the Amended Complaint, dated June 19, 2006 (the "Motion to Dismiss the Amended Complaint"). The Movants bring their Motion to Dismiss the Amended Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure. The Movants argue that the Plaintiff, Kenneth P. Silverman, as Chapter 7 trustee (the "Trustee") of the bankruptcy estates of Allou Distributors, Inc., and other entities (the "Debtor"), does not satisfy the pleading threshold of Rule 8(a), does not plead fraud with the particularity required by Rule 9(b), and does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

## **Background**

Procedural History

On April 8, 2005, the Trustee filed a complaint (the "Original Complaint") against the Defendants in which he seeks to avoid as fraudulent transfers certain transfers of assets that the Trustee alleges to have originated as assets of the Debtor, and to recover the transferred property from the Defendants. Adv. Pro. Docket No. 1. On August 4, 2005, the Movants filed a Motion to Dismiss the Complaint (the "Motion to Dismiss the Original Complaint"). Adv. Pro. Docket No. 8.

On March 23, 2006, the Court, by then-Chief Judge Melanie L. Cyganowski, granted the

Movants' Motion to Dismiss the Original Complaint in part. Adv. Pro. Docket No. 14 (Transcript of hearing held March 23, 2006). The Court denied the Movants' challenge to the Trustee's unjust enrichment claim, and denied the Movants' statute of limitations challenge to the Trustee's conversion claim. *Id.* The Trustee was granted leave to replead the dismissed claims. *Id.*

On June 19, 2006, the Trustee filed an Amended Complaint (the "Amended Complaint"). Adv. Pro. Docket No. 19. *See* Affidavit of Franklin Snitow, Esq., dated August 25, 2006, Exh. D (Original Complaint and Amended Complaint marked to show differences). On August 25, 2006, the Movants filed the Motion to Dismiss the Amended Complaint. A hearing was held before this Court on July 16, 2007, at which counsel for the Movants and counsel for the Plaintiff appeared and were heard. After consideration of the submissions and the arguments of counsel, and for the reasons set forth below, the Motion to Dismiss the Amended Complaint is granted in part and denied in part.

The Amended Complaint

The Trustee asserts that this adversary proceeding arises out of the alleged fraudulent diversion of the Debtor's assets by Victor Jacobs and his sons Herman Jacobs, Jacob Jacobs, and Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz (the "Jacobs"), as the former principals of the Debtor, and their relatives and accomplices (collectively, the "Jacobs Family"). Amended Complaint ¶ 1. The Trustee asserts that the Jacobs Family orchestrated a fraudulent scheme through which they diverted at least $15,265,000, of the Debtor's assets to entities that they owned, controlled, or had an interest in, and that those entities purchased a parcel of real property and constructed a condominium project using the diverted assets. Amended Complaint

2

¶¶ 1-6.

The Trustee asserts forty-nine claims for relief in the Amended Complaint.  These claims include fraudulent transfer claims under Section 548(a)(1)(A) of the Bankruptcy Code for actual fraud and Section 548(a)(1)(B) of the Bankruptcy Code for constructive fraud.[1]  Pursuant to Section 544(b)(1) of the Bankruptcy Code, the Trustee also asserts fraudulent transfer claims under Sections 273, 274, 275, 276, and 276(a) of the New York Debtor and Creditor Law (the "DCL").[2]  The Trustee seeks recovery from the Defendants as initial transferees of the avoided transfers pursuant to Section 550(a)(1) of the Bankruptcy Code under a "collapsing" theory[3] or, in the alternative, as immediate or mediate transferees of an initial transferee under Section 550(a)(2).[4]  The Trustee also asserts common law claims for fraud, conversion, conspiracy to commit fraudulent conveyances, and unjust enrichment, and seeks the imposition of a

---

[1]  *See* Amended Complaint, Tenth Claim for Relief, Twenty-Second Claim for Relief, Twenty-Ninth Claim for Relief, Thirtieth Claim for Relief, Thirty-Sixth Claim for Relief, Thirty-Seventh Claim for Relief.

[2]  *See* Amended Complaint, First through Fourth Claims for Relief, Sixth through Ninth Claims for Relief, Thirteenth through Sixteenth Claims for Relief, Eighteenth through Twenty-First Claims for Relief, Twenty-Fifth through Twenty-Eighth Claims for Relief, Thirty-Second through Thirty-Fifth Claims for Relief, Thirty-Ninth through Forty-Second, and Forty-Fourth Claim for Relief.

[3]  *See* Amended Complaint, First through Fourth Claims for Relief, Sixth through Eleventh Claims for Relief, Thirteenth through Sixteenth Claims for Relief, Eighteenth through Twenty-Third Claims for Relief, Twenty-Fifth through Thirtieth Claims for Relief, Thirty-Second through Thirty-Seventh Claims for Relief, Thirty-Ninth through Forty-Third Claims for Relief.

[4]  *See* Amended Complaint, Fifth Claim for Relief, Twelfth Claim for Relief, Seventeenth Claim for Relief, Twenty-Fourth Claim for Relief, Thirty-First Claim for Relief, Thirty-Eighth Claim for Relief, Forty-Fourth Claim for Relief.

constructive trust.[5]

Facts Alleged in the Amended Complaint

The Trustee alleges that the fraudulent transfers were accomplished by a series of transfers from the Debtor to entities owned or controlled by Herman Jacobs or his family members, including SE-Roebuck Ltd. ("SE-Roebuck"), Arrow Distributing Corp. ("Arrow"), Buy & Save Trading Corp. ("Buy & Save"), Ever Ready First Aid Medical Supply Corp. d/b/a A&M Enterprises ("A&M"), T.J. Associates, LLC ("T.J. Associates"), Capital Sales Corp. ("Capital Sales"), Impax Trading Corp. ("Impax"), and Kimberley Trading & Holding, Ltd. ("Kimberley") (the "Controlled Entities"), and Eurofactors International Inc. ("Eurofactors"). Amended Complaint ¶¶ 48, 54.

The Trustee alleges that the Controlled Entities and Eurofactors then transferred a portion of the funds they received from the Debtor to or for the benefit of the Movants in connection with the purchase of a block of real property bordered by Kent Avenue, Rush Street, Wythe Avenue, and Morton Street, Brooklyn, New York (the "Kent Avenue Property"), and the construction of condominiums at the Kent Avenue Property (the "Kent Avenue Condominiums"). Amended Complaint ¶¶ 1, 53, 56. The Kent Avenue Condominiums consist of three separate condominiums known as the 525-535 Park Plaza Condominium, the 570-576 Park Plaza Condominium, and the 564-580 Park Plaza Condominium. Amended Complaint ¶ 97.

*The Kent-Rush Transfers*

The Trustee alleges that on December 16, 1998, the Debtor transferred $5,570,000, to an

---

[5] *See* Amended Complaint, Forty-Fifth through Forty-Ninth Claims for Relief.

account in a Swiss bank held by Kimberley, and that between December 16, 1998, and December 29, 1998, Kimberley transferred $4,999,965, to a Swiss bank account held by Eurofactors.  Amended Complaint ¶¶ 67, 68.  The Trustee alleges that on December 21 and 28, 1998, the Debtor transferred $1,450,000, to Impax, and on December 28, 1998, the Debtor transferred $1,500,000, to Arrow.  Amended Complaint ¶¶ 70, 71.  The Trustee alleges that Kimberley, Eurofactors, Impax, and Arrow are owned or controlled by the Jacobs Family. Amended Complaint ¶ 48.

The Trustee also alleges that on December 29, 1998, the day after these transfers by the Debtor were completed, some $7.5 million – $4,999,965, from Eurofactors; $1.5 million from Arrow and $1 million from Impax – was transferred to an attorney's trust account held by Leon Traube, Esq., an attorney who represented the Debtor and the Jacobs in various transactions (the "Kent-Rush Transfers").  Amended Complaint ¶¶ 73, 74.  The Trustee alleges that on December 29, 1998, Kent-Rush Realty used substantially all of the Kent-Rush Transfers to purchase the Kent Avenue Property.  Amended Complaint ¶ 76.  The Trustee alleges that Herman Jacobs is President of Kent-Rush Realty.  Amended Complaint ¶ 23, 24, 45.

The Trustee further alleges that at the December 29, 1998, closing, Kent-Rush Realty granted a $5 million mortgage to K.E.R.U. Realty Corp. (the "K.E.R.U. Mortgage"), and a $2 million mortgage to 2165 K-R Realty Corp. (the "K-R Mortgage"), and that these and other transfers were made for no consideration.  Amended Complaint ¶¶ 72, 75-78.

The Trustee finally alleges that on April 5, 2001, A&M, one of the Controlled Entities, transferred $650,000, to Kent-Rush Realty to pay development expenses for the Kent Avenue Condominiums.  Amended Complaint ¶ 93.

*The DJR Construction Transfers*

The Trustee alleges that Kent-Rush Realty entered into a contract with DJR Construction to serve as general contractor for the construction of the Kent Avenue Condominiums, and that the principal of DJR Construction is Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz, a Jacobs family member.  Amended Complaint ¶¶ 80-86.  The Trustee alleges that on January 19, 1999, $160,000, was transferred from Leon Traube's attorney's trust account to DJR Construction to fund operating expenses.  Amended Complaint ¶ 82.

The Trustee also alleges that from February 25, 1999, to September 13, 2000, the Controlled Entities transferred to DJR Construction at least $2.93 million in thirty transfers to fund construction costs, and that from September 25, 2000, to February 7, 2003, the Controlled Entities transferred to DJR Construction at least an additional $3,435,000, in some two dozen transfers (the "DJR Construction Transfers").  Amended Complaint ¶¶ 83, 90.

The Trustee further alleges that the funds transferred by the Controlled Entities to DJR Construction originated from the Debtor.  Amended Complaint ¶¶ 84, 93.  The Trustee alleges that the Individual Defendants are principals of DJR Construction and that they, along with Aaron Jacobs a/k/a Ari Jacobowitz, "must have known that the transfers to DJR were made by entities that were not parties to the Construction Contract which in turn, shows their knowing participation in the fraudulent scheme."  Amended Complaint ¶ 86.

*The K-R Residence Transfers – The K-R Residence Funds Transfers*

The Trustee alleges that from February 13, 1999, to August 4, 2000, the Controlled Entities transferred at least $590,000, to K-R Residence (the "K-R Residence Funds Transfers").  Amended Complaint ¶¶ 94-96.  The Trustee alleges that these funds originated from the Debtor.

Amended Complaint ¶ 95.

The Trustee also alleges that Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz is the President, and the Individual Defendants are principals, of K-R Residence.  Amended Complaint ¶ 45.  And the Trustee alleges that the Individual Defendants "must have known" that the K-R Residence Funds Transfers were from entities that were not parties to the construction contract, showing their knowing participation in a scheme to defraud the Debtor.  Amended Complaint ¶ 96.

The Trustee further alleges that K-R Residence was designated in certain condominium offering plans as the sponsor and selling agent for the Kent Avenue Condominiums.  Amended Complaint ¶ 99.  The Trustee alleges that on July 11, 2000, Kent-Rush Realty and K-R Residence agreed that K-R Residence would receive ten percent of the net purchase price for each unit sold to third parties (the "K-R Residence Contract").  Amended Complaint ¶ 104.  The Trustee further alleges that K-R Residence received over $1 million in connection with the K-R Residence Contract and paid those funds to the Individual Defendants.  Amended Complaint ¶ 105.

### The K-R Residence Transfers – The K-R Residence Condominium Transfers

The Trustee alleges that on December 5, 2002, Kent-Rush Realty transferred ten condominium units to K-R Residence (the "K-R Residence Condominium Transfers" and together with the K-R Residence Funds Transfers, the "K-R Residence Transfers").  Amended Complaint ¶ 106.  The Trustee alleges that the deed reflecting the transfer of the ten condominium units was signed by Herman Jacobs as president of Kent-Rush Realty, dated December 2, 2002, and recorded on April 28, 2003, less than three weeks after the involuntary

bankruptcy petitions were filed against the Debtor and three of its affiliates.  Amended

Complaint ¶ 107.  The Trustee alleges that K-R Residence paid no consideration for the K-R

Condominium Transfers and later sold one of the condominium units for $382,500.  Amended

Complaint ¶¶ 108, 109.  The Trustee alleges, upon information and belief, that K-R Residence

continues to own nine condominium units (the "K-R Units").  Amended Complaint ¶ 111.

### The R&D Development Transfers

The Trustee alleges that on February 26, 2003, Kent-Rush Realty, as landlord, entered

into 99-year renewable leases with R&D Development for four basements and sub-basements

that were part of the K-R Units (the "R&D Development Leased Units") for no or less than fair

consideration.  Amended Complaint ¶¶ 112, 113.  The Trustee alleges that the Individual

Defendants are principals of R&D Development.  Amended Complaint ¶ 45.

The Trustee also alleges that on February 25, 2003, and October 30, 2003, Kent-Rush

Realty transferred five condominium units to R&D Development for no or less than fair

consideration (the "R&D Development Units" and together with the R&D Development Leased

Units, the "R&D Development Transfers").  Amended Complaint ¶¶ 114, 115.  The Trustee

alleges that Kent-Rush Realty continues to own two condominium units.  Amended Complaint

¶ 116.

### The Transfers to the Individual Defendants

The Trustee alleges that the Individual Defendants "personally received millions of

dollars as a result of their interest in DJR [Construction], K-R Residence and R&D" (the

"Individual Transfers").  Amended Complaint ¶ 119.  The Trustee alleges that "every single

dollar transferred from The Debtor inured to the personal benefit of [the Individual Defendants]

8

because they would otherwise have had to fund the costs of development themselves as DJR [Construction] and K-R Residence had no independent and legitimate means of income." *Id.*

The Trustee further alleges that the Individual Defendants received more than $1 million from the sale of the units by K-R Residence pursuant to the K-R Residence Contract, as well as additional amounts arising from R&D Development's interest in the R&D Units and the R&D Leased Units, "all of which are income generating properties that, upon information and belief, have been leased by R&D to third parties." Amended Complaint ¶ 119.

*The Bedford Wall Transfers*

The Trustee alleges that in September 2000, Bedford Wall Realty Corp. ("Bedford Wall Realty"), Kent-Rush Realty, and 2165 K-R Realty entered into an agreement (the "Spreader Agreement") providing that a $2 million lien given to 2165 K-R Realty under the K-R Mortgage at the time of the purchase of the Kent Avenue Property would be "spread" to cover real property owned by Bedford Wall Realty located at Bedford Avenue, Brooklyn, New York (the "Bedford Wall Property"). Amended Complaint ¶ 122. The Trustee alleges that Aaron Jacobs a/k/a/ Ari Jacobowitz is a principal of Bedford Wall Realty. Amended Complaint ¶ 45.

The Trustee also alleges that at the same time, Kent-Rush Realty and 2165 K-R Realty entered into an agreement to release the Kent-Rush Property from the $2 million K-R Mortgage. Amended Complaint ¶ 122. The Trustee alleges that as a result of these transactions, the Bedford Wall Property was substituted for the Kent-Rush Property as security for the K-R Mortgage. Amended Complaint ¶ 123. The Trustee alleges that the K-R Mortgage was and still is "subject to The Debtor's interest therein as the actual source of the monies that funded the K-R Mortgage." *Id.*

9

The Trustee further alleges that in July 2003, Bedford Wall Realty transferred the Bedford Wall Property to 724 Bedford LLC ("724 Bedford") and "[a]t the same time, the K-R Mortgage was transferred to Tereza [LLC] by assignment of mortgage . . . which assignment was executed by Herbert Greenfield . . . ." Amended Complaint ¶ 124. The Trustee alleges that Defendants 724 Bedford and Tereza LLC ("Tereza") are owned or controlled by the Jacobs and Aaron Jacobs a/k/a Ari Jacobowitz. Amended Complaint ¶ 127. The Trustee alleges that Aaron Jacobs a/k/a Ari Jacobowitz executed the Spreader Agreement and the deed to 724 Bedford on behalf of Bedford Wall Realty, and Herman Jacobs executed the Spreader Agreement on behalf of Kent-Rush Realty. Amended Complaint ¶ 125.

The Trustee alleges that the these transfers (the "Bedford Wall Transfers") were made "with the intent of placing the K-R Mortgage and the Bedford Wall Property . . . beyond the reach of Allou, and its creditors." Amended Complaint ¶ 128.

## Discussion

### The Standard for Dismissal Under Rule 12(b)(6)

In reviewing a complaint for sufficiency under Rule 12(b)(6), the court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). The court accepts as true the well-pleaded factual allegations made by the plaintiff, and "must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

10

The Second Circuit has observed that in addition to the factual allegations contained in the complaint, the court may also consider the contents of any "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

This standard requires a plaintiff to do more than simply speculate about circumstances that might conceivably give rise to a claim for relief. As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (citations and quotations omitted). That is, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" in order to state a claim that survives scrutiny under Rule 12(b)(6). *Bell Atlantic*, 127 S. Ct. at 1974. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (the *Bell Atlantic* standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"). Thus, a claim may be sustained only if the plaintiff has "nudged [its] claims across the line from conceivable to plausible. . . ." *Bell Atlantic*, 127 S. Ct. at 1974.

The Standard for Dismissal Under Rule 9(b)

As a counterweight to the liberal pleading standard established by Rule 12(b)(6) and Rule

8(a), Rule 9(b) raises the bar for certain types of claims at the pleading stage.  It requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake . . . be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  FED. R. CIV. P. 9(b).  Rule 9(b) serves several purposes, including "(1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits."  *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 285-86 (S.D.N.Y. 1998).  *See O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 279 (S.D.N.Y. 1990), *aff'd*, 936 F.2d 674 (2d Cir. 1991).

To satisfy Rule 9(b)'s pleading requirements "'a complaint must allege with some specificity the acts constituting fraud . . . conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'"  *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).

Thus, "plaintiffs are required 'to allege facts that give rise to a strong inference of fraudulent intent.'"  *Westdeutsche Landesbank Girozentrale v. SNC-Lavalin Constructors, Inc. (In re Enron Corp.)*, 2006 WL 2400083, at *8 (Bankr. S.D.N.Y. 2006) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)).  *See Securities Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999).  In the bankruptcy context, courts have found that "[a] plaintiff can sufficiently allege intent (a) by alleging that a defendant had both motive and opportunity to commit fraud or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *In re Enron Corp.*, 2006 WL

12

2400083, at *8.  *See Nisselson v. Drew Indus. Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998).

And in the bankruptcy context, courts have evaluated fraud allegations more liberally than in other civil actions charging fraud.  *See, e.g., Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 21 (Bankr. E.D.N.Y. 2006); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D. Ill. 1998); *Harrison v. Entm't, Inc. (In re Rave Commc'ns, Inc.)*, 138 B.R. 390, 396 (Bankr. S.D.N.Y. 1992).  This is because in such cases, "it is often the trustee, a third party, who is pleading fraud on secondhand information."  *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983).  As one court found, "[s]ince a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead *scienter* based upon information and belief provided he pleads the basis of his belief."  *In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428.  *See Global Link Liquidating Trust v. Avantel*, *S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 717 (Bankr. D. Del. 2005).

The particularity requirements of Rule 9(b) apply only if actual, as opposed to constructive, fraud is alleged.  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801-02.  Thus, for example, Rule 9(b) does not apply to constructive fraudulent transfer claims under Section 548(a)(1)(B) and applicable state law, because such claims are not based on fraud but are based on the transferor's financial condition and the value given in exchange by the transferee.  *See, e.g., In re Global Link Telecom Corp.*, 327 B.R. at 717; *In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428; *Stratton Oakmont*, 234 B.R. at 319.

13

<u>The Standard for Dismissal Under Rule 8(a)</u>

To survive a motion to dismiss under Rule 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). *See Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic*, 127 S. Ct. at 1964).

As one bankruptcy court in this Circuit recently found:

> The purpose of the statement is to provide 'fair notice' of the claim and 'the grounds upon which it rests.' *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 325 B.R. 671 (Bankr. S.D.N.Y. 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In other words, '[Rule 8] is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.' *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

*Official Comm. of Unsecured Creditors of 360Networks (USA), Inc. v. Pirelli Commc'ns Cables & Sys. USA LLC (In re 360Networks (USA), Inc.)*, 367 B.R. 428, 432 (Bankr. S.D.N.Y. 2007).

Rule 8(a) sets a lower bar than Rule 12(b)(6) or Rule 9(b), and "does not require a plaintiff to plead the legal theory, facts, or elements underlying his claim." *Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 457 F. Supp. 2d 298, 303-04 (S.D.N.Y. 2006) (quotations and citations omitted).

<u>The Motion to Dismiss the Amended Complaint</u>

*The First through Forty-Fourth Claims for Relief –*
<u>*Avoiding and Recovering the Alleged Fraudulent Transfers*</u>

The First through Forty-Fourth Claims for Relief assert fraudulent transfer claims under Sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code and Sections 273, 274, 275,

276, and 276(a) of the DCL, and seek to impose liability upon the Defendants for the transfers

that are avoided.  The Movants argue that these claims should be dismissed because they do not

adequately state claims for recovery from the Defendants as "initial transferee[s]" under Section

550(a)(1), or alternatively, as "immediate or mediate transferee[s]" under Section 550(a)(2).

Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Movants' Mem.")

at 6.  The Movants challenge the Trustee's Section 550(a) claims in total, and also challenge

separately the Trustee's Sections 550(a)(1) and (a)(2) claims.

<u>Whether the Amended Complaint May State a Claim for Recovery of the Alleged
Fraudulent Transfers Before the Initial Transfers Are Avoided</u>

The Movants argue that all of the Trustee's Section 550(a) claims must fail because the

Amended Complaint does not seek to avoid the initial transfers but seeks only to avoid the

subsequent transfers, and that recovery is available only after the Trustee avoids the initial

transfers of the Debtor's property.  Movants' Mem. at 6.  *See* Movants' Reply Memorandum of

Law in Support of Motion to Dismiss Amended Complaint ("Movants' Reply Mem.") at 8-9.

The Trustee argues that even though Section 550(a) requires that a transfer be avoided

before actual recovery is made against any transferee, the Bankruptcy Code does not require that

the claims to avoid and to recover a transfer be brought in a single adversary proceeding.

Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint

("Plaintiff's Mem.") at 15-16.

The Bankruptcy Code provides distinct concepts and processes for avoidance of a

fraudulent transfer and recovery of the avoided transfer from the transferee.  *See* 11 U.S.C.

§§ 548, 550.  *See also Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 81

(Bankr. S.D.N.Y. 2006).  Section 550(a) is a remedies section and defines the party from whom

15

a trustee may seek to recover property that is fraudulently transferred or the value or proceeds of such property.  Section 550(a)(1) provides that either an "initial transferee" or "the entity for whose benefit such transfer was made" is liable for an avoided transfer.  11 U.S.C. § 550(a)(1).  Section 550(a)(2) provides that "any immediate or mediate transferee of such initial transferee" – that is, a subsequent transferee – may be liable for an avoided transfer.  11 U.S.C. § 550(a)(2).

The Bankruptcy Code also provides defenses to an avoidance action that may be available to a subsequent transferee.  Under Section 550(b)(1), a trustee may not recover an otherwise avoidable transfer from a subsequent transferee "that takes for value, including satisfaction or securing a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b)(1).  For these reasons, "[w]hether a 'transferee' under § 550 is an initial or subsequent transferee . . . has significant consequences with respect to liability and available defenses."  *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs., Inc. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 201 (Bankr. S.D.N.Y. 2005).

Section 550(a) requires the Trustee to establish that the transfer was "avoided under Section 544, 545, 547, 548, 549, 553(b), or 724(a). . . ."  11 U.S.C. § 550(a).  Once the transfer is avoided, the Trustee may pursue the actual recovery of the transfer from the initial transferee or the entity for whose benefit such transfer was made, or an immediate or mediate transferee.  11 U.S.C. §§ 550(a)(1), (a)(2).  *See In re Enron*, 343 B.R. at 81; *Savage & Assocs. P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*, 307 B.R 744, 749 (Bankr. S.D.N.Y. 2004).

Neither Section 550(a) nor any other provision of the Bankruptcy Code requires a trustee to pursue both the avoidance of the initial transfer and the recovery of the transfer in a single

adversary proceeding.  Nor does the Bankruptcy Code explicitly address whether a trustee must avoid a transfer in order to state a claim for recovery of the transfer from a transferee.

In *In re Enron*, the court considered whether recovery under Section 550(a) of a transfer of the debtor's property from a subsequent transferee requires that the transfer have previously been avoided, and concluded that "although the two actions may be brought simultaneously, the plain language of Section 550(a) requires that the transfer first be avoided, i.e., determined to be improper, prior to actual recovery from any transferee." *In re Enron*, 343 B.R. at 76.  Thus, before the Trustee may obtain an "actual recovery" from the Movants under Section 550(a), he must first avoid the underlying initial transfers.  *Cf. IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689 (11th Cir. 2005) (holding that the trustee must prove only that the transfer is avoidable in order to recover from any subsequent transferee).

The Trustee alleges that he has commenced adversary proceedings against each of the Controlled Entities and Eurofactors to set aside the initial fraudulent transfers of The Debtor's funds to them.  Amended Complaint ¶ 58.  The Trustee alleges that in those actions, default judgments were entered against Arrow and Kimberley.  Amended Complaint ¶ 59.  The Trustee also alleges that, as of the date of the Amended Complaint, SE-Roebuck, Impax, and Buy & Save were in default, and that adversary proceedings against T.J. Associates, Capital Sales, A&M, and Eurofactors were pending and contested.  Amended Complaint ¶¶ 60, 61.  Since the Amended Complaint was filed, a default judgment has been entered against SE-Roebuck (Adv. Pro. No. 05-8086, Docket No. 6) and summary judgment has been entered against T.J. Associates and Capital Sales (Adv. Pro. No. 05-8519, Docket No. 13; Adv. Pro. No. 04-8364, Docket No. 11.)   In addition, the adversary proceeding against Eurofactors has been settled

17

(Adv. Pro. No. 06-8329, Docket No. 5).

Here, the Trustee commenced the adversary proceedings against the Controlled Entities and Eurofactors to avoid the initial transfers before the Amended Complaint was filed.  And judgments or settlements have been entered in several of these actions.  Equally important, the question posed at this stage in the proceedings is whether the Amended Complaint states a claim, not whether the Trustee has established all of the elements necessary for an "actual recovery" from the Movants.  For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a) on grounds that the Amended Complaint seeks only to avoid the alleged subsequent transfers and not the initial transfers is denied.

<u>Whether the Amended Complaint States a Claim for Recovery from the Movants as Initial Transferees Under a "Collapsing" Theory</u>

The Trustee seeks to recover the alleged fraudulent transfers from the Movants as "initial transferees" under Section 550(a)(1).  The Trustee alleges that the transfers at issue "were part of a single scheme to fraudulently transfer funds from Allou, such that the transactions should be collapsed and [the Movants] be deemed to be initial transferees of the Fraudulent Transfers, or entities for whose benefit the Fraudulent Transfers were made, pursuant to Bankruptcy Code § 550(a)(1)."  Amended Complaint ¶¶ 136, 140, 148, 158.

The Movants challenge the Trustee's "collapsing" theory on several grounds.  The Movants argue that the Trustee's attempt to collapse the transfers falls short because a series of transactions may be collapsed only where there appears to have been fair consideration for the initial transfer but, upon closer scrutiny, the substance of the series of transactions, taken together, indicates that the debtor did not ultimately receive fair consideration.  The Movants

assert that inasmuch as The Debtor made the initial transfers to the Controlled Entities for no

consideration, the subsequent transfers to the Movants may be recovered only under Section

550(a)(2).  Movants' Reply Mem. at 10.

Alternatively, the Movants argue that the Trustee's "collapsing" theory is deficient

because the Trustee has not adequately alleged that the Movants were part of a scheme to

defraud.  Movants' Mem. at 3.  The Movants argue that the Trustee's allegations of a fraudulent

scheme are conclusory and speculative and do not satisfy the requirements of Rules 8(a) and

9(b).  *Id*.  They also argue that the Trustee's fraud allegations do not relate back to the Original

Complaint and are barred by the statute of limitations.  Movants' Mem. at 3-4.

The Second Circuit has observed that "[i]t is well established that multilateral

transactions may under appropriate circumstances be 'collapsed' and treated as phases of a

single transaction for analysis under the [fraudulent conveyance law]."  *HBE Leasing Corp. v.

Frank*, 48 F.3d 623, 635 (2d Cir. 1995).  The court has declined to "turn a blind eye to the

reality" of the substance of a series of transactions in determining whether a fraudulent

conveyance has been shown, and has observed:

> In equity, "substance will not give way to form, [and] technical considerations
> will not prevent substantial justice from being done."  *Pepper v. Litton*, 308 U.S.
> 295, 305, 60 S. Ct. 238, 244, 84 L. Ed. 281 (1939); . . . Thus, an allegedly
> fraudulent conveyance must be evaluated in context: "[w]here a transfer is only a
> step in a general plan, the plan 'must be viewed as a whole with all its composite
> implications.'"  *Pereira v. Checkmate Communications Co. (In re Checkmate
> Stereo & Elec., Ltd.)*, 9 B.R. 585, 612 (Bankr. E.D.N.Y. 1981) (quoting *Buffum v.
> Peter Barceloux Co.*, 289 U.S. 227, 232, 53 S. Ct. 539, 541, 77 L. Ed. 1140
> (1933), *aff'd*, 21 B.R. 402 (E.D.N.Y. 1982).

*Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993).  *See Official Comm. of Unsecured

Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 370

(Bankr. S.D.N.Y. 2002) ("Courts have 'collapsed' a series of transactions into one transaction when it appears that despite the formal structure erected and the labels attached, the segments, in reality, comprise a single integrated scheme when evaluated focusing on the knowledge and intent of the parties involved in the transaction.").

In *HBE Leasing*, the Second Circuit noted that collapsing "finds its most frequent application to lenders who have financed leveraged buyouts of companies that subsequently become insolvent," but did not limit the collapsing doctrine to such circumstances. *HBE Leasing*, 48 F.3d at 635. The court found that the "paradigmatic scheme" in which collapsing applies is where:

> one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing.

*Id.* But a paradigm is simply an example – it does not, by itself, define the exclusive elements of a claim to recover a fraudulent transfer based on a "collapsing" theory. *See In re Sunbeam Corp.*, 284 B.R. at 370 ("Although the concept of 'collapsing' a series of transactions and treating them as a single integrated transaction has been applied primarily . . . in the context of a failed levered buy-out ('LBO'), it has also been utilized in other contexts.").

Working from this paradigm, the *HBE Leasing* court identified two conditions for "collapsing" the transactions for purposes of establishing a fraudulent conveyance. The first condition identified by the court was, "*in accordance with the foregoing paradigm*, the consideration received from the first transferee must be reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors." *HBE Leasing*, 48 F.3d at 635. (emphasis added). More generally, the first condition for collapsing a series of transactions is

that the transactions, taken as a whole, diminish the value of the debtor's estate and are marked

by either a transfer made by the debtor for less than fair consideration or a transfer made by the

debtor with actual fraudulent intent.  *See id.*

The second condition identified by the court was "the transferee in the leg of the

transaction sought to be voided must have actual or constructive knowledge of the entire scheme

that renders her exchange with the debtor fraudulent."  *Id.*  As the court found:

> The case law has been aptly summarized in the following terms:
>
> "In deciding whether to collapse the transaction and impose liability on particular defendants, the courts have looked frequently to the knowledge of the defendants of the structure of the entire transaction and to whether its components were part of a single scheme."

*HBE Leasing*, 48 F.3d at 635-36 (quoting *In re Best Prods. Co.*, 168 B.R. 35, 56-57 (Bankr.

S.D.N.Y. 1994).

The Second Circuit described the constructive notice needed to satisfy this condition:

> [T]he transferee need not have actual knowledge of the scheme that renders the conveyance fraudulent.  Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry.

*HBE Leasing*, 48 F.3d at 636.  The court observed that "[t]here is some ambiguity as to the

precise test for constructive knowledge in this context."  *Id*.

Thus, a claim for a fraudulent transfer may be alleged based on "collapsing" a series of

transactions where the transactions, taken as a whole, diminish the value of the debtor's estate

and are marked by either a transfer made by the debtor for less than fair consideration or a

transfer made by the debtor with actual fraudulent intent, and the party from whom recovery is

sought had actual or constructive knowledge of the entire scheme that renders the transfer

21

fraudulent.

The Movants argue that a series of transactions may be collapsed only where the series begins, like the "paradigm" in *HBE Leasing*, with a transfer by a debtor that appears to be for fair consideration, but upon closer scrutiny provides no value to the debtor. Movants' Mem. at 7-8. The Movants argue that "when a debtor makes a transfer of funds for no consideration (which is avoidable as a fraudulent conveyance) and the funds are thereafter 'washed' through other entities in a series of subsequent transfers, 'collapsing' may not be used in order to convert a 'subsequent transferee' into an 'initial transferee.'" Movants' Mem. at 8. They argue that under this "wash" scenario, "a claim lies against the initial recipient under § 550(a)(1) as the 'initial transferee' and against the subsequent recipients as the 'mediate or intermediate transferee' under § 550(a)(2)." Movants' Mem. at 8-9. The Movants note that a subsequent recipient of a transfer may be subject to a claim under Section 550(a)(1) where the initial recipient was a "mere conduit,"[6] and suggest that where the initial transfer by a debtor is for no consideration, only the "mere conduit" theory, not a "collapsing" theory, supports a recovery under Section 550(a)(1) from a subsequent transferee. Movants' Mem. at 9.

But as indicated above, *HBE Leasing* and other authorities do not limit recovery under a "collapsing" theory to situations where the initial transfer in the series of transactions appears to be, but is not, for value. Rather, these authorities establish two conditions for the statement of a claim for collapsing a series of transactions: that the transactions, taken as a whole, are marked

---

[6] The "mere conduit" theory is based on the premise that the conduit did not have dominion or control over the transferred property and cannot or should not be deemed a "transferee." *See Stratton Oakmont*, 234 B.R. at 313 ("an initial transferee has dominion and control over the *res* of the initial transfer, whereas a conduit has but a fleeting possessory interest therein").

by either a transfer made by the debtor for less than fair consideration or one made by the debtor with actual fraudulent intent; and that the transferee from whom recovery is sought had actual or constructive knowledge of the entire scheme.  *See, e.g., Orr*, 991 F.2d at 35; *In re Sunbeam Corp.*, 284 B.R. at 370; *In re Best Prods. Co.*, 157 B.R. 222, 229 (Bankr. S.D.N.Y. 1993).  *See also* pp. 19-22, *supra*.

And the authorities relied upon by the Movants, which arise in the context of whether an initial transferee was a "mere conduit" that was unable to exercise dominion and control over the assets transferred by the debtor, do not preclude the "collapsing" theory advanced by the Trustee.  *See* Movants' Mem. at 8-10.  Rather, they confirm that courts should look to the substance, as well as the form, of a series of transactions to determine whether a fraudulent transfer claim has been pleaded or proved.

For example, in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), the trustee sought to recover $200,000, from a bank as the initial transferee. There, the bank received a check from the debtor and followed the debtor's instructions to deposit the funds in the account of the debtor's principal.  *Bonded Fin. Servs., Inc.*, 838 F.2d at 891.  The debtor's principal then applied the funds to pay down the balance of his personal loan. *Id*.  The court held that the debtor's principal, not the bank, was the initial transferee, and that the bank was not a transferee at all but merely a financial intermediary or conduit.  *Bonded Fin. Servs., Inc.*, 838 F.2d at 893.  The court reasoned that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.  When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded."  *Id*.

23

Similarly, in *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997), the Second Circuit declined to hold that the first entity to receive a transfer from a debtor is necessarily the "initial transferee." There, the debtor prepaid the premium for a three-year extension of its malpractice insurance before filing for bankruptcy. *In re Finley, Kumble*, 130 F.3d at 53. The court found that the premium could not be recovered from the insurance broker because, despite the broker's participation in the selection of the insurance carrier, the broker was a "mere conduit" of the premium payment. *In re Finley, Kumble*, 130 F.3d at 58.

In *IBT International, Inc. v. Northern (In re International Administrative Services, Inc.)*, 408 F.3d 689 (11th Cir. 2005), the trustee sought to avoid and recover funds that were transferred more than one hundred times among twenty-three entities through multiple transactions. *IBT Int'l, Inc.*, 408 F.3d at 696. The trustee commenced an adversary proceeding seeking to avoid the various transfers but did not name the initial transferees – the attorney and firm who formulated the plan – as defendants. *Id.* The bankruptcy court and district court ruled in favor of the trustee and the defendants appealed, arguing that the trustee should have first avoided the transfer to the initial transferees. *IBT Int'l, Inc.*, 408 F.3d at 698. The Eleventh Circuit declined to deem the initial transferees as conduits. *IBT Int'l, Inc.*, 408 F.3d at 706. The court held that "Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers," but rather "once a plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line." *IBT Int'l, Inc.*, 408 F.3d at 706, 708.

Finally, in *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248 (1st

Cir. 1991), the court found that transfers to initial transferees in a "sham" transaction were void under Section 548(a)(1), and that the subsequent transferee was the "entity for whose benefit [the initial] transfer was made" under Section 550(a)(1). *Max Sugarman Funeral Home, Inc.*, 926 F.2d at 1256. Alternatively, the court found that the transfers could be recovered from the subsequent transferee under Section 550(a)(2). *Id.* The court concluded that "[under] Bankruptcy Code § 550(a)(1), the trustee in bankruptcy is entitled to recover from [the subsequent transferee] for the benefit of the debtor estates" all assets transferred through the initial transfers and the subsequent transfers. *Max Sugarman Funeral Home, Inc.*, 926 F.2d at 1257.

Here, the Trustee is not seeking to recover from the Defendants as initial transferees by deeming the Controlled Entities and Eurofactors "mere conduits" under the dominion and control test. Rather, the Trustee is seeking to collapse the series of transactions ending with transfers to the Movants and to state a claim to recover from them under Section 550(a)(1) as initial transferees. As the Trustee notes, "the issues of whether the transfers should be collapsed and whether a party is a 'mere conduit' are different issues involving different analyses." Plaintiff's Mem. at 20 n.23.

Viewed in this light, it is clear that the Trustee has adequately alleged that the transactions at issue, taken as a whole, satisfy the first condition for collapsing – that is, they diminished the value of the Debtor's estate and were marked by a transfer by the Debtor for less than fair consideration or a transfer by the Debtor with actual fraudulent intent. Accordingly, the Movants' challenge to the Trustee's "collapsing" theory, and the Section 550(a)(1) claim, turns on whether the Trustee has adequately alleged that the transactions at issue, taken as a whole,

satisfy the second condition for collapsing – that is, whether the Movants had actual or constructive knowledge of the entire scheme that renders them fraudulent.

> ### Whether the Amended Complaint Adequately Alleges that the Movants Had Actual or Constructive Knowledge of a Scheme To Defraud the Debtor

As discussed above, to satisfy Rule 9(b)'s pleading requirements "'a complaint must allege with some specificity the acts constituting fraud . . . conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'" *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801.  *See* pp. 9-13, *supra.*  Fraud allegations are more liberally evaluated in bankruptcy cases because "it is often the trustee, a third party, who is pleading fraud on secondhand information." *In re O.P.M. Leasing Servs., Inc.*, 32 B.R. at 202.

Rule 8(a) is satisfied if the complaint provides "'fair notice' of the claim and 'the grounds upon which it rests.'" *In re 360Networks (USA), Inc.*, 367 B.R. at 432.  *See* p. 14, *supra.*

The Movants argue that the Trustee's allegations that they had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor are "at best speculative and conclusory and, at worst, pure fabrication." Movants' Mem. at 11.  For these reasons, the Movants argue that the Trustee's claims based on their alleged knowledge of the scheme do not satisfy Rule 9(b) or Rule 8(a) and must be dismissed.

In response, the Trustee points to several allegations in the Amended Complaint and urges that they show that the Movants, and in particular the Individual Defendants, were aware of and participated in the "overall scheme" to fund the construction of the Kent Avenue Condominiums with funds that were fraudulently diverted from the Debtor.  Plaintiff's Mem. at 22.

A review of the Amended Complaint shows that the Trustee alleges that some $7 million was transferred, by wire transfer or check, from the Controlled Entities to DJR Construction and K-R Residence in some 90 transfers.  *See* Amended Complaint ¶¶ 81-85, 90, 94.  The Amended Complaint also states that the transfers came from seven different entities, none of which was involved in the Kent Avenue Condominiums.  *See* Amended Complaint ¶¶ 83, 90, 94.  And the Amended Complaint states that the funds were deposited into a bank account for which the Individual Defendants were the authorized signatories.  *See* Amended Complaint ¶ 85.  The Amended Complaint states that the Individual Defendants' failure to question the source of these funds provides a basis to infer that they knowingly participated in the Jacobs' fraudulent scheme. Amended Complaint ¶¶ 86, 96.

The Amended Complaint further alleges that the Individual Defendants incorrectly stated in the offering plans for the Kent Avenue Condominiums that they were the sole principals of K-R Residence and did not disclose that Aaron Jacobs a/k/a Ari Jacobowitz was the president of K-R Residence.  Amended Complaint ¶ 100.  The Amended Complaint states that this information was withheld from the public record to make it more difficult for anyone to discover the Jacobs' involvement with the selling agent of the condominium project.  Amended Complaint ¶ 101. The Amended Complaint states that the Individual Defendants should have questioned the transfers of the R&D Leased Units and the R&D Units by Kent-Rush Realty for less than fair consideration.  Amended Complaint ¶¶ 112-15, 118.

And the Amended Complaint states that several of the entities involved in the transactions and transfers, including Kent-Rush Realty, DJR Construction, K-R Residence, and 2165 K-R Realty, were formed on the same day that the agreement relating to the construction of

the Kent Avenue Condominiums was entered into by Chaim Dushinsky and Herman Jacobs. Amended Complaint ¶¶ 81, 130.

Here, a review of the Amended Complaint shows that the Trustee adequately alleges that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums. The Amended Complaint states a motive and opportunity to participate in the alleged fraud – that is, the financial motive to profit from the construction project involving companies owned or controlled by the Individual Defendants. *See In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428.

Alternatively, the Amended Complaint states facts sufficient to "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. The Amended Complaint states that the Movants received some 90 transfers, from seven different entities that were not known to be involved in the development or construction of the Kent Avenue Condominiums, and that the Movants were aware of, but did not question, the transfer of valuable condominium units by Kent-Rush Realty to K-R Residence and R&D Development for less than fair consideration.

And similarly, the Amended Complaint meets the low threshold established by Rule 8(a) as to these claims, because it states facts sufficient to put the Movants on notice of the claims against them and the legal theories upon which those claims are based.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a)(1) on grounds that the Amended Complaint does not satisfy the requirements of Rule 9(b) and Rule 8(a) is denied. And for these same

reasons, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a)(1) on grounds that the Amended Complaint does not adequately allege a claim under a "collapsing" theory is denied.

Whether the Claims Arising Out of an Alleged "Scheme" Are Barred by the Statute of Limitations

The Movants argue that the Trustee's fraudulent conveyance claims based on a scheme to defraud are barred by the statute of limitations.  Movants' Mem. at 15-17.  They argue that these allegations do not relate back to the Original Complaint because the Original Complaint did not put them on notice of the Trustee's theory that they engaged in a scheme fraudulently to transfer funds from the Debtor, and that the Trustee has asserted that they were participants in such a scheme for the first time in the Amended Complaint.  *Id.*

The Trustee asserts that his claims are timely and relate back to the Original Complaint as required by Rule 15(c).  He also argues that Rule 15(c) does not require the new claims to have been asserted in the original pleading, because a single transaction or occurrence can give rise to many claims.  Plaintiff's Mem. at 8.  Alternatively, the Trustee argues that even if these claims do not relate back to the Original Complaint, the doctrine of equitable tolling precludes their dismissal.  Plaintiff's Mem. at 14.  He argues that the statute of limitations may be equitably tolled when fraud has been concealed or is of such character as to conceal itself, until the fraud is discovered by or becomes known to the party seeking relief.  *Id.*

The amendment of a pleading is governed by Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  FED. R. CIV. P. 15(c)(2).  As the

Second Circuit has observed:

> The purpose of "Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" . . . "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading. . . .'" Under Rule 15, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.
>
> In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back.

*Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (citations omitted). *See Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 255-56 (S.D.N.Y. 1987) (holding that a claim relates back under Rule 15(c) if the "general fact situation alleged in the original pleading" provided adequate notice of the new allegations), *aff'd*, 842 F.2d 612 (2d Cir. 1988), *cert. denied sub nom. O'Reilly v. N.Y. Times Co.*, 488 U.S. 856 (1988); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1263 (S.D.N.Y. 1992).

In addition, the Second Circuit has found that where fraud is alleged, a new claim will relate back if there is "sufficient commonality" between the new claim and the matters alleged in the original pleading to avoid "unfair surprise" to the defendant. *Benfield v. Mocatta Metals*, 26 F.3d 19, 23 (2d Cir. 1994).

Rule 15(c) does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading. Rule 15(c) requires only that they arise out of the same "conduct, transaction, or occurrence . . . attempted to be set forth" in the original complaint, but

those original allegations do not need to have been sufficient, on their own, to state a claim. FED. R. CIV. P. 15(c)(2).  As courts have found, "adequate notice" not of the particulars but of the "general fact situation" is all that is required.  *Contemporary Mission, Inc.*, 665 F. Supp. at 255-56.  But if there is no common ground between the allegations of the original complaint and those of the amended pleading, then "unfair surprise" would be the result, the repose offered by statutes of limitation would be an empty promise, and relation back must be denied.  *Benfield*, 26 F.3d at 23.

Here, the Original Complaint alleged that "[m]illions of dollars of Allou funds were fraudulently diverted from Allou through certain Jacobs controlled entities, as detailed herein, to DJR with the knowledge of Ari [Jacobowitz] and DJR's other principals, Defendants Dushinsky and Rabinowitz."  Original Complaint ¶ 2.  The Original Complaint also alleged:

> Upon information and belief, [the Individual Defendants] knew that millions of dollars were being paid directly to DJR and K-R Residence from entities other than Kent-Rush Realty, the purported owner of the Kent-Rush Property and knew, or should have known, that the DJR Construction Transfers, the K-R Residence Transfers and the R&D Development Transfers were fraudulent.

Original Complaint ¶ 105.  These same individuals, entities, properties, and transfers are the basis for the allegations that the Movants participated in a scheme fraudulently to transfer funds from the Debtor, and are sufficient to provide the Movants with notice of the "general fact situation" that gives rise to the Trustee's scheme allegations.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a)(1), on grounds that the allegations of a scheme do not relate back to the Original Complaint and are therefore barred by the statute of limitations, is denied.

<u>Whether the Amended Complaint Adequately Alleges that the Movants Are
Entities for Whose Benefit the Transfers Were Made</u>

The Movants argue that the Trustee's Section 550(a)(1) claim based on the theory that

they are "'entities for whose benefit the Fraudulent Transfers [by the Debtor] were made'"

should be dismissed because under Second Circuit authority, "an ultimate recipient of funds can

never be 'the entity for whose benefit' the initial transfer was made."  Movants' Mem. at 10.

The Trustee responds that DJR Construction was an entity for whose benefit the transfers

were made because it was the general contractor for the Kent Avenue Condominiums and

received payments in that capacity.  Plaintiff's Mem. at 26.  The Trustee similarly argues that

Kent-Rush Realty was an entity for whose benefit the transfers were made because it was

required to provide financing for the construction of the Kent Avenue Condominiums and like

DJR Construction, received funds which it used in that capacity.  Plaintiff's Mem. at 26-27.  For

these reasons, the Trustee argues, these entities were each an "'entity for whose benefit' the

initial transfer[s] were made as referred to in 11 U.S.C. § 550(a)(1)."  Plaintiff's Mem. at 26.

*See* Amended Complaint ¶¶ 81, 83, 90.

Under Section 550(a)(1), a trustee may recover an avoided transfer from "the initial

transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C.

§ 550(a)(1).  "Section 550(a)(1) groups initial transferees with 'entities for whose benefit such

transfer was made' and subjects both groups to strict liability."  *In re Finley Kumble*, 130 F.3d at

57.  The Amended Complaint states:

> As a result of the fraudulent scheme, the foregoing transactions should be
> collapsed and each of the Defendants should be deemed to be initial transferees of
> the Fraudulent Transfers, or entities for whose benefit the Fraudulent Transfers
> were made, pursuant to Bankruptcy Code § 550(a)(1).

Amended Complaint ¶ 132.

In *Stratton Oakmont*, the court described the typical relationship among an initial

transferee, a subsequent transferee, and an entity for whose benefit a transfer is made:

> The quintessential example of the entity who benefits from the initial transfer is a
> guarantor of the debtor. . . .  He or she is relieved of the obligation to pay the
> lender – which is the benefit – while the lender receives the money.  As a general
> rule, initial transferees and entities for whose benefit the initial transfer was made
> are mutually exclusive. . . .  The entity for whose benefit the initial transfer was
> made is also distinguished from a subsequent transferee (§ 550(a)(2)) because the
> former must be the intended beneficiary of the initial transfer and not someone
> who either benefits from the subsequent transfer of the initially transferred money
> or property, or benefits by happenstance from the initial transfer. . . .

*Stratton Oakmont*, 234 B.R. at 314.  The court also observed:

> At this juncture, all the Trustee needs to demonstrate is a possible legal theory
> such that he is allowed to go forward and put on evidence.  Although this benefit
> theory is not explicitly stated in the Complaint, recovery under § 550(a) is not
> subject to a particularized pleading standard and I am allowed to consider theories
> that are not articulated, so long as there are facts alleged to support them.

*Stratton Oakmont*, 234 B.R. at 317-18.  *See Bonded Fin. Servs., Inc.,* 838 F.2d at 895 ("The

paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor – someone

who receives the benefit but not the money.").

Other courts have found that, in the appropriate circumstance, a subsequent transferee

may be an "entity for whose benefit [the initial] transfer was made."  11 U.S.C. § 550(a)(1).  For

example, in *Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768 (Bankr. S.D.N.Y. 1989), *aff'd*

*on other grounds*, 108 B.R. 432 (S.D.N.Y. 1989), the court found:

> [I]f the first transfer would not have been made but in contemplation of another
> previously agreed and nearly contemporaneous transfer, treating each stage as
> merely steps in a single transfer accords with and gives meaning to Congress' use
> of the phrase "entity for whose benefit such transfer was made" in § 550(a)(1).  In
> such an instance, the first step is merely preliminary to the second and the first
> recipient is merely a conduit for the transfer of property.  The second recipient is

not a truly subsequent transferee.

*In re Kanterman*, 97 B.R. at 778.

Here, the Trustee seeks to assert a Section 550(a)(1) claim on these grounds against two of the Movants, DJR Construction and Kent-Rush Realty. *See* Plaintiff's Mem. at 26-27. The Amended Complaint states that these Defendants received or made payments in connection with agreements that were entered into in connection with the Kent Avenue Condominiums. While the agreements alleged in the Amended Complaint may have little in common with a guaranty of a debtor's obligation, which is the "quintessential" or paradigmatic example cited by certain courts that have considered the issue, neither Section 550(a)(1) nor the decisions interpreting it rule out the possibility that these relationships could give rise to liability under this theory.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a) on grounds that the Movants are not entities for whose benefit the transfers at issue were made is denied.

<u>Whether the Amended Complaint States a Claim for Recovery from the Movants
as Immediate or Mediate Transferees of an Initial Transferee</u>

As an alternative theory of relief, the Trustee seeks to recover the alleged fraudulent transfers from the Movants as immediate or mediate transferees of an initial transferee under Section 550(a)(2) of the Bankruptcy Code. *See* Amended Complaint ¶¶ 1-6, 27-30, 45-46, 48, 51-57, 67-69, 80-96, 98-131. The Trustee alleges that the transfers at issue were made in a series of transfers from the Debtor to the Controlled Entities, and then to the Movants, and argues that the Amended Complaint sets forth these transfers and the Movants' roles in them.

The Movants argue that the Trustee's Claims for Relief against them as subsequent transferees under Section 550(a)(2) should be dismissed because the Amended Complaint does

not adequately trace the funds allegedly received by the Movants to the initial transfers by the

Debtor.  Movants' Mem. at 18-19.

As discussed above, Section 550(a)(2) of the Bankruptcy Code provides that a transfer

avoided under Sections 544 or 548 can be recovered from the immediate or mediate transferee of

the initial transfee.  11 U.S.C. § 550(a)(2).  In *IBT International, Inc. v. Northern (In re*

*International Administrative Services, Inc.)*, 408 F.3d 689 (11th Cir. 2005), the court described

the plaintiff's burden in establishing the tracing element of a Section 550(a)(2) claim:

> In an action seeking recovery, the plaintiff has the burden of tracing funds it
> claims to be property of the estate. . . .  Although we agree with this proposition,
> it is also true that proper tracing does not require dollar-for-dollar accounting. . . .
> The bankruptcy court determined that the Trustee successfully proved by a
> preponderance of the evidence that the $1.050 million transferred to [the
> defendant] from [intermediary] accounts, originated solely with [the debtor].  We
> cannot find that conclusion clearly erroneous.  [The debtor's principal and its
> counsel] perpetrated a fraud that can only be described as massive.  It is not fatal
> to the Trustee's case that dollar for dollar, the exact funds cannot be traced.

*In re Int'l Admin. Servs., Inc.*, 408 F.3d at 708.

That is, in order to prove a Section 550(a)(2) claim, a plaintiff must carry its burden to

establish that the funds at issue are property of the estate – but this burden is not so onerous as to

require "dollar-for-dollar accounting" of "the exact funds" at issue.  *See id.*  And similarly, in

order to state a Section 550(a)(2) claim, a plaintiff must allege sufficient facts to show, if proved,

that the funds at issue originated with the debtor.  But if dollar-for-dollar accounting is not

required at the proof stage, then surely it is not required at the pleading stage either.

Here, the Trustee alleges that funds were transferred from the Debtor to the Controlled

Entities and Eurofactors, and those funds were subsequently transferred to the Defendants to

fund the purchase of the Kent-Rush Property and the construction of the Kent-Rush

35

Condominiums.  Specifically, the Amended Complaint states:

> Upon information and belief, from December 1998 through February 2003, at least tens of millions of dollars were fraudulently diverted from Allou to the Controlled Entities.  As set forth below, a portion of these fraudulently diverted funds was transferred from the Controlled Entities to, or for the benefit of, the Defendants and used to purchase the Kent Avenue Property and construct the Kent Avenue Condominiums.

> . . .

> The funds transferred by the Controlled Entities and Eurofactors in connection with the Kent Avenue Condominiums were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the transfers by the Controlled Entities and Eurofactors.

Amended Complaint ¶¶ 53, 56.

More specifically, the Amended Complaint describes several transfers from the Debtor to Eurofactors and the Controlled Entities and states that those funds were used to purchase the Kent Avenue Property and construct the Kent Avenue Condominiums, all to the benefit of the Defendants to varying degrees.  *See* Amended Complaint ¶¶ 67-79.  In addition, the Amended Complaint describes the adversary proceedings commenced by the Trustee against the Controlled Entities and Eurofactors to avoid and recover fraudulent transfers from the Debtor, and states that some or all of these funds were transferred to the Defendants here.  *See* Amended Complaint ¶¶ 58-61, 74, 76, 82, 84, 91, 93, 95.  And the Amended Complaint identifies the date and amounts of the transfers from the Controlled Entities to several of the Defendants, including DJR Construction and K-R Residence.  *See* Amended Complaint ¶¶ 83 (DJR Construction); 90 (DJR Construction); 94 (K-R Residence).

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a)(2) on grounds that the Amended Complaint

does not adequately trace the funds that they allegedly received to the Debtor is denied.

<u>Whether the Amended Complaint States a Claim Against the Individual
Defendants for Recovery of the Individual Transfers</u>

The Trustee seeks to recover from the Individual Defendants "millions of dollars" in unspecified fraudulent transfers. Amended Complaint ¶ 119. The Trustee reasons that the funds transferred from the Debtors "inured to the personal benefit of [the Individual Defendants] because they would otherwise have had to fund the costs of development themselves." *Id.*

The Movants seek dismissal of the claims against the Individual Defendants on several grounds. The Movants argue that "with the exception of the conclusory claim that Dushinsky and Rabinowitz received more than $1 million from K-R Residence, none of the other allegations of fraudulent transfers against Dushinsky and Rabinowitz 'identify the particular interests transferred, and they therefore do not give defendants adequate notice of the transfers challenged.'" Movants' Mem. at 26 (quoting *Gindi v. Silvershein*, 1996 WL 194304, at *2 (S.D.N.Y. 1996)). For these and other reasons, the Movants argue that the Trustee's claims do not satisfy the pleading requirements of Rule 8(a) and 9(b), and are barred by the statute of limitations contained in Section 546 of the Bankruptcy Code because they do not relate back to the Original Complaint. Movants' Mem. at 19-26.

As discussed above, Rule 9(b) requires that "'a complaint must allege with some specificity the acts constituting fraud . . . conclusory allegations that defendant's conduct was fraudulent are not enough.'" *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801 (quoting *Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 293). This rule is applied more liberally in bankruptcy cases, because the trustee may be required to "[plead] fraud on secondhand information." *In re O.P.M. Leasing Servs., Inc.*, 32 B.R. at 202. *See* pp. 9-13, *supra*. Where allegations are based

37

on information and belief, "a complaint must adduce specific facts supporting a strong inference

of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*,

902 F.2d 169, 172 (2d Cir. 1990) (citations omitted).

And Rule 8(a) requires a plaintiff to plead enough to "'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 127 S. Ct. at 2200

(quoting *Bell Atlantic*, 127 S. Ct. at 1964). It "does not require a plaintiff to plead the legal

theory, facts, or elements underlying his claim." *In re Methyl Tertiary Butyl Ether ("MTBE")*

*Prods. Liability Litig.*, 457 F. Supp. 2d at 303-04 (quotations and citations omitted). *See* p. 14,

*supra*.

A review of the Amended Complaint shows that the Trustee has not identified any

specific transfer from the Debtor or a Controlled Entity to either of the Individual Defendants.

In contrast to the allegations concerning transfers to other Movants, the Amended Complaint

does not identify the source, dates, or amounts of the transfers that the Trustee claims may be

recovered, under Section 550(a)(1) or Section 550(a)(2), from the Individual Defendants.

Rather, the Amended Complaint states that the Individual Defendants personally received

"millions of dollars as a result of their interest in DJR, K-R Residence and R&D," and that

"every single dollar transferred from Allou inured to the personal benefit of [the Individual

Defendants] because they would otherwise have had to fund the costs of development

themselves as DJR Construction and K-R Residence had no independent and legitimate means of

income." Amended Complaint ¶ 119. The Amended Complaint also states that "[u]pon

information and belief, in excess of $1,000,000, was received by K-R Residence pursuant to the

K-R Residence Contract and ultimately paid to Dushinsky and Rabinowitz" and "[a]ll of the

Individual Transfers represent proceeds derived from the Fraudulent Transfers." Amended

Complaint ¶¶ 105, 120. But these allegations do not set forth the necessary vital statistics – the

who, when, and how much – of the transfers "in excess of $1,000,000" to be recovered.

For these reasons, and based on the entire record, the Movants' request for dismissal of

the Trustee's Claims for Relief against the Individual Defendants on grounds that the Amended

Complaint does not adequately identify the transfers to be avoided under Section 550(a)(1) or

Section 550(a)(2) is granted.[7]

Whether the Amended Complaint States a Claim for Recovery from Kent-Rush
Realty for the Bedford Wall Transfers

The Trustee seeks to avoid and recover the value of the Bedford Wall Transfers from

Kent-Rush Realty, 2165 K-R Realty Corp., Bedford Wall Realty, 724 Bedford, and Tereza under

Sections 273, 274, 275, 276, and 276(a) of the DCL, as initial transferees under Section

550(a)(1), or in the alternative, as immediate or mediate transferees of an initial transferee under

Section 550(a)(2). *See* Amended Complaint ¶¶ 278-99.

The Movants seek to dismiss these claims against Kent-Rush Realty on grounds that the

Amended Complaint does not adequately state a claim that Kent-Rush Realty was an initial

transferee, or an entity for whose benefit the alleged fraudulent transfers were made, or an

immediate or mediate transferee of an initial transferee, in connection with the Bedford Wall

---

[7]   The Movants also argue that the Trustee's claims against the Individual Defendants are
barred by the statute of limitations. Movants' Mem. at 19-21. The Trustee responds that the
allegations of the Original Complaint put the Individual Defendants on notice of the nature of the
claims against them, and also that the statute of limitations as to Section 550(a)(2) has not run.
Plaintiff's Mem. at 10-14. *See* pp. 29-32, *supra*. The Court need not address whether the
Trustee's allegations against the Individual Defendants relate back to the Original Complaint
because those allegations are not sufficient to state a claim for relief.

Transfers.  Movants' Mem. at 27-28.  More generally, the Movants argue that the Trustee does

not allege that the Bedford Wall Transfers provided "any benefit whatsoever" to Kent-Rush

Realty.  Movants' Mem. at 27.  And the Movants also argue that the claims against Kent-Rush

Realty are duplicative of other claims asserted in the Amended Complaint.  Movants' Reply

Mem. at 20.

> The Trustee argues:
>
> > Those claims are based on allegations that Kent Rush Realty executed a $2
> > million mortgage in favor of 2165 K-R (the "K-R Mortgage") in consideration for
> > a purported loan from 2165 K-R to purchase the Kent Rush Property when, in
> > fact, Allou, not 2165 K-R, was the source of the funds that were loaned.  The K-R
> > Mortgage, which should have been satisfied in September of 2000 and the
> > proceeds repaid to Allou in connection with the Construction Loan obtained by
> > Kent Rush Realty, was instead released and "spread" to cover a different property
> > (the "Bedford Wall Property"), and thereafter assigned to Tereza, a Jacobs-
> > affiliated entity. . . .  [T]he result of these machinations was "to substitute the
> > Bedford Wall Property for the Kent Rush Property in the K-R Mortgage," and
> > "[t]he K-R Mortgage was, and still is, subject to Allou's interest therein as the
> > actual source of the monies that funded the K-R Mortgage."

Plaintiff's Mem. at 34 (quoting Amended Complaint ¶ 123).

The Trustee argues that when Kent-Rush Realty executed a mortgage and granted a lien

on the Kent-Rush Property, it participated in a "chain of transfers" that had the effect of

transferring property that was fraudulently acquired with the Debtor's assets.  "Thus, Kent-Rush

Realty is a transferee in the chain of the Bedford Wall Transfers . . . ."  Plaintiff's Mem. at 35.

Here, the Trustee seeks to recover the value of the lien interest that Kent-Rush Realty

placed on property that was, he alleges, acquired with funds that were fraudulently transferred

from the Debtor.  It may well be that the Trustee will not be able to carry the burden of proving

all of the elements of a claim for recovery against Kent-Rush Realty under Section 550(a)(1) or

Section 550(a)(2), or that relief under these claims will be duplicative of other relief.  But here

40

too, neither these Bankruptcy Code sections nor the decisions interpreting them preclude the possibility that the Trustee may be able to succeed on this claim.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief against Kent-Rush Realty arising out of the Bedford Wall Transfers is denied.

*The Forty-Fifth Claim for Relief – Common Law Fraud*

The Forty-Fifth Claim for Relief asserts common law fraud claims against K-R Residence, K.E.R.U. Realty Corp., 2165 K-R Realty, Kent-Rush Realty, DJR Construction, R&D Development, Aaron Jacobs a/k/a Ari Jacobowitz, the Individual Defendants and the Bedford Wall Defendants. Specifically, the Trustee alleges:

> Upon information and belief, the Kent Rush Defendants, DJR, R&D, Ari, Dushinsky, Rabinowitz, and the Bedford Wall Defendants knew that the Jacobs were fraudulently diverting funds from Allou to pay for the Kent Rush Property and for the construction of the Kent Avenue Condominiums.
>
> By reason of the foregoing, the Kent Rush Defendants, DJR, R&D, Ari, Dushinsky, Rabinowitz, and the Bedford Wall Defendants are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000, plus appropriate interest thereon.

Amended Complaint ¶¶ 300, 301.

The Movants argue that this claim should be dismissed because it does not plead fraud with particularity and does not specify the type of fraud that the Trustee is alleging. Movants' Mem. at 28. They argue that the Trustee's conclusory allegations found in other parts of the Amended Complaint about an alleged scheme do not comply with Rules 8(a) or 9(b), and that the Trustee does not describe the Movants' role in the alleged scheme. Movants' Mem. at 28.

The Trustee argues that "[a] fraud claim need not be based upon a misrepresentation or

omission." Plaintiff's Mem. at 28. The Trustee further claims that the "allegations of Movants' knowledge and participation sufficiently set forth a claim that Movants 'schemed' to fraudulently divert Allou's funds," and that such allegations state "a valid claim for common law fraud." *Id*.

The Trustee also argues that under *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), "[a] fraud claim need not be based upon a misrepresentation or omission." Plaintiff's Mem. at 28. In *McClellan*, the Seventh Circuit analyzed the term "actual fraud" in Section 523(a)(2)(A) of the Bankruptcy Code, which concerns the dischargeability of a debt obtained by "actual fraud," and held that "section 523(a)(2)(A) is not limited to fraudulent misrepresentation." *McClellan*, 217 F.3d at 893. The Seventh Circuit found that "actual fraud," for purposes of Section 523(a)(2)(A), encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.*

To state a claim for fraud under New York law, a plaintiff must allege that "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Eastman Kodak Co. v. Wachovia Bank Nat'l Ass'n*, 2007 WL 2406919, at *4 (W.D.N.Y. 2007) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996)).

As noted above, the Court has already determined that the Trustee has adequately alleged "facts that give rise to a strong inference of fraudulent intent" by the Movants, by alleging both motive and opportunity to participate in the alleged fraud and "circumstantial evidence of conscious misbehavior or recklessness." *In re Enron*, 2006 WL 2400083, at *8. *See* pp. 26-28,

*supra.*  And for that reason, the Trustee's Section 550(a)(1) claim based on a "collapsing" theory has been sustained.  *See* pp. 28-29, *supra.*  But to state a fraud claim under New York law, the Trustee must also allege that the Debtor reasonably relied on a misrepresentation to its detriment. *See Eastman Kodak Co.*, 2007 WL 2406919, at *4.

Here, the Court is not evaluating the sufficiency of pleading "actual fraud" under Section 523(a)(2)(A) of the Bankruptcy Code.  *Cf. Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 111 (2d Cir. 2002).  Nor does it appear that courts have applied the standard for establishing this element of a dischargeability claim to the question of whether all of the elements of a common law fraud claim under New York law have been alleged, including whether a material false representation must be made.

Similarly, the Trustee's allegations that the Movants were aware of and participated in the overall scheme to fund the construction of the Kent Avenue Condominiums with funds that were fraudulently diverted from the Debtor do not serve to sustain his common law fraud claim. While those allegations are sufficient to establish, at the pleading stage, one of the elements of the Trustee's "collapsing" theory of recovery under Section 550(a)(1) of the Bankruptcy Code, they do not establish a claim for common law fraud.  *See* pp. 26-28, *supra.*  Rather, each of the elements of a fraud claim under New York law must be pleaded in order for the Trustee's common law fraud claim to be sustained.

Here, a review of the Amended Complaint shows that it does not state that the Movants made a material false representation to the Debtor, or that the Debtor relied to its detriment on such a misrepresentation.  That is, the Trustee has not adequately alleged at least two of the four elements of a common law fraud claim.  Therefore, the Amended Complaint does not

sufficiently plead facts that allege a claim for relief based upon common law fraud under New York law.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief for common law fraud on grounds that the Amended Complaint does not state the elements of the claim is granted.

### *The Forty-Sixth Claim for Relief – Conspiracy To Commit Fraudulent Conveyances*

The Forty-Sixth Claim for Relief asserts a claim for conspiracy to commit fraudulent conveyances against Aaron Jacobs a/k/a Ari Jacobowitz and the Individual Defendants. Specifically, the Trustee alleges:

> Beginning [in] or about late December, 1998, an agreement or understanding was entered into between and among Herman, and Defendants, Ari, Dushinsky and Rabinowitz pursuant to which Allou funds would be fraudulently conveyed through the Controlled Entities and Eurofactors to entities formed by them, namely, Kent Rush Realty, DJR and K-R Residence.

> Herman and Defendants Ari, Dushinsky and Rabinowitz are co-conspirators who knew that the funds were being fraudulently conveyed from Allou and that no consideration was given by Kent Rush Realty, DJR and K-R Residence to Allou for any of these funds.

> By reason of the foregoing, Ari, Dushinsky and Rabinowitz are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000 plus appropriate interest thereon.

Amended Complaint ¶¶ 302-04.

The Movants argue that this claim should be dismissed under Rule 9(b), among other grounds, because it is conclusory and lacks the factual allegations necessary to plead a conspiracy claim. Movants' Mem. at 28-29; Movants' Reply Mem. at 17-18. The Movants also argue that the conspiracy claim should be dismissed because it is duplicative of the other claims against the Individual Defendants set forth in the Amended Complaint. Movants' Mem. at 29.

The Trustee argues that the conspiracy claims should be measured under the more liberal pleading rules of Rule 8(a), and that the Amended Complaint adequately sets forth the elements of a claim against the Individual Defendants for conspiracy to commit fraudulent conveyances. Plaintiff's Mem. at 29-30.  The Trustee also argues that the Amended Complaint provides notice of the basis for the Trustee's claims, and states facts from which the Individual Defendants' intentional participation in the conspiracy may be inferred.  Plaintiff's Mem. at 30.  The Trustee further argues that the Movants' argument that the conspiracy claims are duplicative of other claims against the Individual Defendants is premature because they have not yet served an answer, and adds that pleading in the alternative is allowed under Rule 8(e).  *Id.*

Under New York law, a claim for civil conspiracy to commit a tortious act may not be asserted in a vacuum.  Rather, "the claim is available 'only if there is evidence of an underlying actionable tort.'"  *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 504 (S.D.N.Y. 2003) (quoting *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001)).  *See Stratton Oakmont*, 234 B.R. at 331 (a conspiracy claim "'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt acts'") (quoting *Powell v. Kopman*, 511 F. Supp. 700, 704 (S.D.N.Y. 1981)); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102, 103 (1986) (conspiracy allegations "are permitted only to connect the actions of separate defendants with an otherwise actionable tort.").

Courts in this Circuit have recognized that "[w]here there is an underlying tort, the elements of civil conspiracy are: '(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the

resulting damages.'"  *Pope v. Rice*, 2005 WL 613085, at *13 (S.D.N.Y. 2005) (quoting *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986)).  *See Eastman Kodak Co. v. Camarata*, 2006 WL 3538944, at *17 (W.D.N.Y. 2006).  And courts in this Circuit have similarly recognized that a claim for conspiracy to commit a fraudulent conveyance may be stated under New York law.  *See, e.g.*, *UFCW Local 174 Commer. Health Care Fund v. Homestead Meadows Foods Corp.*, 2005 U.S. Dist. LEXIS 25922, at *6 (S.D.N.Y. 2005) (finding that the plaintiff stated a claim for conspiracy to commit fraudulent conveyance).

To the extent the claim sounds in fraud, the heightened pleading standard of Rule 9(b) applies.  *See Pereira v. Binet (In re Harvard Knitwear, Inc.)*, 153 B.R. 617, 628 n.3 (Bankr. E.D.N.Y. 1993) ("The presence of fraud as part of a conspiracy charge brings the complaint under the requirement of Fed. R. Civ. P. 9(b) that the circumstances constituting fraud be stated with particularity.").

Here, the Trustee alleges that the Individual Defendants entered into "an agreement or understanding" under which "Allou funds would be fraudulently conveyed through the Controlled Entities and Eurofactors to . . . Kent Rush Realty, DJR and K-R Residence."  Amended Complaint ¶ 302.  The Trustee also alleges that the Individual Defendants "knew that the funds were being fraudulently conveyed from Allou."  Amended Complaint ¶ 303.  These allegations of an agreement or understanding are supported by the Trustee's allegations that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums.  *See* pp. 26-28, *supra*.  The Amended Complaint also states facts sufficient to show that the Debtor suffered damages resulting from the alleged conspiracy.

46

But these allegations are not enough to establish all of the elements of the Trustee's conspiracy claim.  In particular, a review of the Amended Complaint shows that it does not contain allegations sufficient to state that the Individual Defendants undertook an "overt act" in furtherance of the conspiracy.  Such allegations must do more than show that the alleged conspirator was aware of the fraudulent conveyance and undertook an overt act as a consequence of receiving the transfer.  Viewed another way, in order to state a claim for conspiracy to commit a fraudulent conveyance, a plaintiff must allege facts showing that the conspirator committed an overt act that furthered the conveyance itself.

And even if the Amended Complaint set forth "independent overt acts undertaken in pursuit of [the] conspiracy," where those overt acts form the basis for other claims for relief, the conspiracy claim is duplicative of those claims and should be dismissed.  *Stratton Oakmont*, 234 B.R. at 332.  As Chief Judge Brozman found:

> Since New York courts do not recognize an independent cause of action for civil conspiracy, the [conspiracy claim] can lie only if it alleges, in addition to the conspiracy, independent overt acts undertaken in pursuit of that conspiracy.  Here, the overt acts alleged by the Trustee . . . are already embodied in the Complaint's [other] Claims for Relief asserted against [these defendants].  Accordingly, the [conspiracy] Cause of Action is duplicative of those claims and should be dismissed.

*Id*. (citing cases).  *See Briarpatch Ltd. v. Geisler Roberdeau, Inc*., 2007 WL 1040809, at *26 (S.D.N.Y. 2007) ("where the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the conspiracy claim is dismissed as duplicative").  Consistent with this notion, it is difficult to see how recovery by the Trustee on a well-pleaded conspiracy claim would not be entirely duplicative of relief available to the Trustee on his other claims.

47

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief against the Individual Defendants for conspiracy to commit fraudulent conveyances on grounds that the Amended Complaint does not state the elements of the claim is granted.

*The Forty-Eighth Claim for Relief – Conversion*

The Forty-Eighth Claim for Relief asserts a claim against the Defendants for conversion. Specifically, the Trustee alleges that the "Defendants converted the assets of Allou that were used to pay for the Kent-Rush Property and construction of the Kent Avenue Condominiums," and that the Defendants "are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000 plus appropriate interest thereon."  Amended Complaint ¶¶ 308, 309.  The Trustee also alleges that "[a]s a result of the fraudulent scheme described above, the Defendants are estopped from asserting that any portion of the claim for conversion is barred by the statute of limitations."  Amended Complaint ¶ 310.

The Movants argue that this claim should be dismissed on grounds that it is time-barred under Section 214 of the New York Civil Practice Law and Rules.  Movants' Mem. at 29. Section 214 provides that a conversion claim must be commenced within three years of the date of conversion.  N.Y. C.P.L.R.  214.  The Movants also argue that the Trustee has not set forth sufficient facts by affidavit to show that the doctrine of equitable tolling should apply.  Movants' Reply Mem. at 19.

The Trustee argues that $6,151,000, of the alleged converted funds were transferred within the three-year limitations period, so that this portion of his conversion claims is not time-barred under any circumstances.  Plaintiff's Mem. at 31.  The Trustee also argues that his claim

48

to recover the remaining $9,114,000, of the alleged converted funds is not time-barred under the doctrine of equitable tolling.  Plaintiff's Mem. at 32.  The Trustee further argues that under *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966), courts may bar the assertion of a statute of limitations defense where the defendants' affirmative wrongdoing caused a delay between the accrual of the cause of action and the institution of the legal proceeding.  Plaintiff's Mem. at 31-32.  For these reasons, he argues that equitable tolling should apply and the Movants should be estopped from asserting a statute of limitations defense as to any portion of the converted funds.  *Id.*

The application of the doctrine of equitable tolling generally turns on questions of fact that are difficult to resolve on a motion to dismiss.  As one court found, "[g]enerally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."  *Hoffkins v. Orleans BOCES*, 2007 WL 1288210, at *2 (W.D.N.Y. 2007).

Here, a review of the Amended Complaint shows that the Trustee has alleged sufficient facts, taken as a whole, adequately to state the grounds for application of the doctrine of equitable tolling.  That is, the Amended Complaint states that "[a]s a result of the fraudulent scheme described above, the Defendants are estopped from asserting that any portion of the claim for conversion is barred by the statute of limitations."  Amended Complaint ¶ 310.  And for the reasons described above, the Trustee has adequately alleged that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums.  *See* pp. 26-28, *supra*.

For these reasons, and based on the entire record, the Movants' request for dismissal of

the Trustee's Claim for Relief for conversion is denied.

*The Forty-Ninth Claim for Relief – Constructive Trust*

The Forty-Ninth Claim for Relief seeks the imposition of a constructive trust against all

of the Defendants.  Specifically, the Trustee alleges:

> The acquisition of the Kent Avenue Property and the construction of the Kent
> Avenue Condominiums was accomplished, in part, through the fraudulent
> diversion of monies of Allou and in breach of the Jacobs' fiduciary obligations to
> Allou and its creditors as officers and directors of Allou.
>
> As set forth above, each of the Defendants was unjustly enriched as a result of the
> Transfers and may not in equity and good conscience retain the benefit of the
> Transfers.
>
> The Trustee has no adequate remedy at law.
>
> By reason of the foregoing, the Trustee is entitled to the imposition of a
> constructive trust upon the Transfers, and all of the monies, rents, income,
> proceeds and profits heretofore or hereafter received by the Defendants in
> connection therewith for the full amount of their respective liability to the Trustee
> as set forth above.

Amended Complaint ¶¶ 311-14.

The Movants argue that the constructive trust claim in the Amended Complaint should be

dismissed because the Trustee has not alleged three of the four elements necessary to establish a

claim for the imposition of a constructive trust.  Movants' Mem. at 30.  Here, the Movants argue,

only the final element of unjust enrichment has been stated.  *Id.*

The Trustee argues that the allegations in the Amended Complaint that the Movants were

unjustly enriched through their use of the Debtor's assets to finance the construction of the Kent

Avenue Condominiums are sufficient to support his constructive trust claim.  Plaintiff's Mem. at

32.  Imposition of a constructive trust, he argues, is flexible and even "limitless," and courts will

50

effect such relief whenever necessary to satisfy the demands of justice.  *Id.*

The imposition of a constructive trust under New York law generally requires the

following elements to be shown:  "(1) a confidential or fiduciary relationship; (2) a promise,

express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4)

unjust enrichment."  *Superintendent of Ins. for the State of N.Y. v. Ochs (In re First Cent. Fin.

Corp.*), 377 F.3d 209, 212 (2d Cir. 2004).

A "constructive trust is an equitable remedy, not a legal relationship."  *ESI, Inc. v.

Coastal Power Prod. Co.*, 995 F. Supp. 419, 436 (S.D.N.Y. 1998).  New York law provides that

a constructive trust:

> arises against an entity that, by fraud (actual or constructive), by duress or by
> abuse of confidence, or by commission of a wrong or other form of
> unconscionable conduct, artifice, concealment, or questionable means, either has
> obtained or holds the legal right to property which in equity and in good
> conscience it ought not to hold and enjoy.

*Tese-Milner v. TPAC, LLC (In re TICKETPLANET.COM)*, 313 B.R. 46, 68 (Bankr. S.D.N.Y.

2004).

The imposition of a constructive trust is an equitable and flexible remedy.  For these

reasons, courts have imposed constructive trusts even where one or more of these elements is

absent, if other circumstances signal that a constructive trust is necessary to avoid a manifestly

inequitable result.  *See, e.g.*, *Koreag, Controle et Revision S.A. v. Refco F/X Assocs. (In re

Koreag, Controle et Revision S.A.*), 961 F.2d 341, 353 (2d Cir. 1992) ("the absence of any one

factor will not itself defeat the imposition of a constructive trust when otherwise required by

equity"); *American Motor Club, Inc. v. Neu (In re American Motor Club, Inc.)*, 109 B.R. 595,

599 (Bankr. E.D.N.Y. 1990) ("the application of a constructive trust is flexible and limitless and

51

courts will effect such relief, 'whenever necessary to satisfy the demands of justice'") (citation omitted)).

But as noted by the New York Court of Appeals, "though as an equitable doctrine its application to particular circumstances is susceptible of some flexibility, to establish a constructive trust there must be provided:  (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment." *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 623, 406 N.E.2d 440, 440 (1980).

Here, it has already been determined that the Amended Complaint states a claim for unjust enrichment, so that element of the Trustee's claim for a constructive trust, as the Movants acknowledge, has been alleged.  But a review of the Amended Complaint shows that the Trustee has not adequately alleged the existence of a confidential or fiduciary relationship between the Movants and the Debtors.  Nor has the Trustee adequately alleged the existence of a promise, express or implied, by the Movants to the Debtor, or a transfer by the Debtor to the Movants made in reliance on that promise.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief against the Defendants for the imposition of a constructive trust on grounds that the Amended Complaint does not state the elements of the claim is granted.

<u>CONCLUSION</u>

For the reasons stated herein, and based on the entire record, the Motion to Dismiss the Amended Complaint is granted in part to the extent that (i) the claims under Section 550(a)(1) and 550(a)(2) against the Individual Defendants Chaim Dushinsky and Isaac Rabinowitz are

dismissed; (ii) the common law fraud claims against the Movants Kent Rush Realty, K-R Residence, DJR Construction, R&D Development, Chaim Dushinsky, and Isaac Rabinowitz are dismissed; (iii) the conspiracy to commit fraudulent conveyance claims against the Individual Defendants Chaim Dushinsky and Isaac Rabinowitz are dismissed; and (iv) the constructive trust claims against the Movants Kent Rush Realty, K-R Residence, DJR Construction, R&D Development, Chaim Dushinsky, and Isaac Rabinowitz are dismissed.  The Trustee may seek leave to replead those claims within sixty days of the date of this order, and if leave is sought, the Trustee is directed to file the proposed amended complaint with his motion.  In all other respects, the Motion to Dismiss is denied.

The Trustee is directed to submit a proposed order in accordance with this Memorandum Decision.

Dated: Brooklyn, New York
        November **2**, 2007                   _s/Elizabeth S. Stong_____
                                           ELIZABETH S. STONG
                                           UNITED STATES BANKRUPTCY JUDGE